UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60874-Civ-COHN
MAGISTRATE JUDGE P. A. WHITE

JERRY DAVIS,                          :

      Petitioner,                   :

v.                                    :          <u>REPORT OF</u>
                                                 <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,                     :

      Respondent.                   :
_____

<u>Introduction</u>

Jerry Davis has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his conviction for aggravated battery entered in Broward County Circuit Court, case no. 03-5866CF10A.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition (DE#1), the Court has the response of the state to an order to show cause with multiple exhibits (DE#s16,18,19), and the petitioner's reply (DE#24).

The petitioner raises the following 16 claims:

    1.   He was denied effective assistance of counsel, where his lawyer waived his presence at depositions.

    2.   He is entitled to vacatur of his conviction based on the prosecution's

Brady[1] violation.

3.    He was denied effective assistance of
counsel, where his lawyer failed to make
a contemporaneous objection to strike a
prospective juror, and for failing to
move for a mistrial prior to the jury
being sworn in.

4.    He was denied effective assistance of
counsel, where his lawyer failed to
subpoena eye-witness Karen Duffy and Raul
Gomez to testify as defense witnesses at
trial.

5.    He was denied effective assistance of
counsel, where his lawyer failed to
object to Detective Anthony Constanzo's
testimony regarding the victim's injury.

6.    He was denied effective assistance of
counsel, where his lawyer failed to
secure the Home Depot surveillance video
and have it played to the jurors.

7.    He was denied effective assistance of
counsel, where his lawyer failed to
subpoena the emergency room physician who
treated the victim in order to establish
that the victim's injuries were minor.

8.    He was denied effective assistance of
counsel, where his lawyer failed to
request additional peremptory challenges
during the jury selection process.

9.    He was denied effective assistance of
counsel, where his lawyer failed to
impeach the victim with a prior
inconsistent statement.

10.   He was denied effective assistance of
counsel, where his lawyer misadvised him
regarding the prosecution's use of the
petitioner's prior convictions during
trial if the petitioner exercised his
constitutional right to testify on his

---

[1]Brady v. Maryland, 373 U.S. 83 (1963).

own behalf.

11. His constitutional rights were violated by the court who delegated to the prosecution the discretion to rule on a crucial request from the defense.

12. The prosecution withheld crucial evidence in violation of <u>Giglio</u>[2].

13. He was denied effective assistance of counsel, where his lawyer failed to object to the prosecutorial misconduct during closing argument.

14. He was denied effective assistance of counsel, where his lawyer made improper comments during closing argument.

15. His constitutional rights were violated when the prosecution had the victim make an improper show-up identification.

16. His constitutional rights were violated when the court denied the petitioner's judgment of acquittal and refused to reduce the petitioner's charge to battery at the close of the prosecution's case, and at the close of all of the evidence.

## Procedural History

The procedural history of the underlying state court convictions reveals as follows. On April 18, 2003, the petitioner was charged by Information with the aggravated battery with a deadly weapon of Henry Palmer (Count 1), and the robbery with a deadly weapon of Henry Palmer (Count 2). (DE#17:Ex.1). The petitioner proceeded to trial where he was found guilty as to Count 1, and acquitted as to Count 2, following a jury verdict. (DE#17:Ex.3). He was adjudicated guilty and sentenced as a habitual felony offender and a prison releasee reoffender to a term of 30

---

[2]<u>Giglio v. United States</u>, 405 U.S. 150 (1972).

years in prison, with a minimum mandatory of 15 years. (DE#17:Ex.7).

While a request for a belated appeal was still pending, the petitioner returned to the state court filing a motion to correct illegal sentence pursuant to Fla.R.Cr.P. 3.800(b)(2) challenging the constitutionality of his sentence pursuant to Blakely v. Washington, 524 U.S. 296 (2004). (DE#17:Ex.11). On May 16, 2005, the trial court entered an order denying the motion based on the state's response thereto. (DE#17:Exs.12-13).

Meanwhile, the petitioner's request for a belated appeal was granted, and on direct appeal, he raised two claims of trial court error, arguing that the court erred by denying his request to withdraw a peremptory challenge and then backstrike a previously accepted juror, and that his prison releasee reoffender and habitual felony offender sentences violated his constitutional rights. (DE#17:Ex.14). On March 15, 2006, the Fourth District Court of Appeal affirmed the petitioner's conviction and sentence in a published opinion. Davis v. State, 922 So.2d 454 (Fla. 4 DCA 2006); (DE#17:Ex.16). Discretionary review was denied by the Florida Supreme Court on September 13, 2006. Davis v. State, 939 So.2d 1058 (Fla. 2006); (DE#17:Ex.24). The judgment of conviction became final, for purposes of the federal AEDPA's one year statute of limitations, at the latest on December 13, 2006, ninety days following the affirmance of the convictions and sentences on direct appeal.[3]

---

[3]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

Prior to his conviction becoming final, the petitioner returned to the state court filing his first Rule 3.850 motion for postconviction relief raising claims one through nine of this federal petition, as listed above. (DE#17:Ex.25). During its pendency, he then filed his first motion to amend, adding claims ten through twelve of this federal petition, as listed above. (DE#17:Ex.26). Another motion to amend was filed, adding claims thirteen through fifteen, as listed above. (DE#17:Ex.27). Yet another motion to amend was filed, raising claim sixteen, as listed above. (DE#17:Ex.28). On March 8, 2007, after receipt of the state's response to the Rule 3.850 motion and amendments, the trial court entered an order denying the motion based on the state's response. (DE#17:Ex.30). That denial was *per curiam* affirmed by the Fourth District Court of Appeal on July 18, 2007 without written opinion and without requiring a response from the prosecution. Davis v. State, 961 So.2d 955 (Fla. 4 DCA 2007)(table); (DE#17:Ex.32).

On July 31, 2007, the petitioner next filed a state petition for writ of habeas corpus, raising three claims of ineffective assistance of appellate counsel on direct appeal, for failing to assign as error claims 10, 15, and 16 of this federal petition. (DE#17:Ex.34). On August 17, 2007, the Fourth District Court of Appeal denied the petition on the merits. (DE#17:Ex.35).

On October 5, 2007, the petitioner filed a second Rule 3.850 motion re-asserting claims 1, 4, 10, and 14 of this federal petition, as listed above. (DE#17:Ex.36). The state filed a response thereto, arguing that the should be dismissed as successive and an abuse of procedure. (DE#17:Ex.37). On January 2, 2008, the petitioner filed a motion to amend, reasserting claim 7 of this federal petition. (DE#17:39). On January 4, 2008, the trial court entered an order dismissing the second Rule 3.850 motion for

the reasons set forth in the state's response. (DE#17:Ex.38). On January 15, 2008, the trial court also dismissed the petitioner's motion to amend on the basis that it was a successive Rule 3.850 motion. (DE#17:Ex.40). Those dismissals were subsequently *per curiam* affirmed by the Fourth District Court of Appeal without written opinion. <u>Davis v. State</u>, 980 So.2d 1079 (Fla. 4 DCA 2008)(table); (DE#17:Ex.42). The mandate issued on May 30, 2008. (DE#17:Ex.43).

On June 1, 2008, the petitioner then came to this court timely filing this federal habeas corpus petition, raising seventeen claims challenging the trial court's rulings and counsel's effectivenss.[4] (DE#1). A more concise amended petition was filed on August 27, 2008, re-asserting the same claims as listed above. (DE#11). The petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits.

---

[4]<u>See</u>: <u>Adams v. United States</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

<u>Anderson v. Harless</u>, 459 U.S. 4 (1982); <u>Hutchins v. Wainwright</u>, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. <u>Leonard v. Wainwright</u>, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004); <u>Gray v. Netherlands</u>, 518 U.S. 152 (1996); <u>Duncan v. Henry</u>, 513 U.S. 364 (1995); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).  These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.


<u>Facts Adduced At Trial</u>


For an appreciation of the plethora of issues raised in this habeas proceeding, a full review of the facts adduced at trial is essential. The victim, Henry Palmer, testified that on April 7, 2003, he was employed as a loss prevention officer at Home Depot, when he observed the petitioner enter and exit through the store's contractor door on several occasions with nothing in his hands. (T.167-170,197).[5] Palmer observed the petitioner go to different areas of the store, opening items and then putting them back within a few minutes. (T.171-174). At one point, Palmer observed the petitioner put some merchandise from three or four packages in the front pockets of his shorts. (T.173-174). Although Palmer attempted to determine what had been taken, he was unable to do so, but did notify the assistance manager that the petitioner had been stealing, and also followed the petitioner out of the store. (T.174,177).

---

[5]The letter "T" in this Report, followed by a page number, refers to the trial transcripts in the state forum. The trial transcripts have been provided by the respondent and filed as Exhibit 2 to the appendix. <u>See</u> DE#17.

After catching up with the petitioner about six feet outside the entrance to the store, Palmer identified himself and asked to see what was in the petitioner's pocket. (T.175). The petitioner responded by pulling out a box cutter and swiping at Palmer. (T.175-76). Palmer stepped back, but not before being cut, which ultimately required 23 stitches, both internal and external. (T.175,183-84). At that point, however, Palmer did not realize he had been hurt, and continued to follow the petitioner, who kept telling Palmer to leave him alone. (T.178-180). The petitioner then picked up a rock or branch, threatening Palmer with it. (T.176). Meanwhile, a store manager and other personnel had arrived. (T.180). When the manager attempted to grab the petitioner, Palmer cautioned him to be careful as the petitioner had a knife. (T.182). Although the manager may have pushed the petitioner into some bushes, the petitioner was able to get up and run across the street. (T.182-83). Palmer was able to identify the petitioner in court as the individual who cut him.[6] (T.193,195).

Joseph Griffin, the Home Depot Garden Department Supervisor, and Brian Grannenann, the Assistant Store Manager, testified that they were notified that Palmer needed help in the parking lot. (T.223-224,254-56). Griffin observed the petitioner and Palmer struggling, with the petitioner wielding and swinging a rock at Palmer. (T.225). When Griffin got closer, he grabbed Palmer, pulling him away from the petitioner, at which time, the petitioner then ran with the rock still in his hand. (T.225-26). Griffin and Palmer, however, gave chase, catching up to the petitioner, with Palmer pushing the petitioner to the ground. (T.226). The petitioner however was able to get up and then lunged at Palmer, slicing him across the chest. (T.228). Griffin testified he first saw the knife by the bushes. (T.243).

---

[6]At trial, Palmer denied being influenced by anyone in making the in-court identification .(T.195-96).

Grannenann testified however, he first observed the petitioner in the parking lot, during which he was already engaged in a confrontation with Palmer. (T.257-258). He recalled that the petitioner had a large stone or piece of concrete in his hand, motioning as if to throw it. (T.258). Eventually, Grannenann observed the petitioner with a box cutter in his hand, motioning for everyone to step back as he walked towards the bushes. (T.260).

Both Griffin and Grannenann followed the petitiner into a small, wooded area near Sunrise Boulevard. (T.262-264,230-31). When the police eventually arrived, both told relayed what had occurred. (T.232). Later, both Griffin and Grannenann identified the petitioner as the assailant. (T.264-65,232).

Deputy William Chorba testified that he got a dispatch, which included a description of the assailant, when he observed the petitioner walking breathlessly along some railroad tracks. (T.322-323). The petitioner was ordered to stop and get on the ground, which he did. (T.323-24). Eventually, the petitioner was hand-cuffed and arrested. (Id.).

## Discussion of the Claims

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11 Cir. 2007). See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11 Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

A federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008); Parker v. Sec. Dept. of Corrections, 331 F.3d at 768. Consequently, a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)(majority opinion by O'Connor, J.).

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v.

<u>Sec. of Dep't of Corr</u>., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2053 (2008); <u>Henderson v. Campbell</u>, 353 F.3d 880, 889-90 (11th Cir. 2003).

As will be demonstrated in more detail *infra*, the petitioner is not entitled to vacatur on any of the claims presented.[7] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally trial and due process of law. The petitioner therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506

---

[7]Briefly, as narrated previously in this Report, the evidence against the petitioner was more than sufficient to support his convictions. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to <u>Strickland</u> has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the petitioner received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

U.S. 364, 369-70 (1993).

Regarding the majority of the ineffective assistance of counsel claims raised herein, in order to prevail as to those claims, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11

Cir.), cert. den'd, ___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

     In **claim one**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer waived his presence at depositions. According to the petitioner, he advised counsel he wanted to be present during depositions so that he could discuss areas of examination that needed to be explored, as well as conflicts in the testimony of the deponent with that of the victim. (DE#17:Ex.25:2-3).

     When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, based on the state's response, which argued as follows:

> ...this matter is legally insufficient. The defendant has not identified which depositions he allegedly wished to attend or demonstrated how his absence allegedly prejudiced the defense. Cf., *Aldridge v. Wainwright*, 777 F.2d 630 (11th Cir. 1985)(defendant failed to demonstrate prejudice from counsel's failure to take depositions, where no demonstration what depositions would have revealed). Further the record reflects that, during trial, Davis' attorney particularly noted that the defendant has been participating in the entire trial, and taking notes to assist her. (See Attachment A; Relevant Excerpts of Trial [R163-387] at R339-340). As neither deficient performance of counsel nor prejudice has been demonstrated, this claim for relief should be summarily DENIED in all respects.

(DE#17:Exs.29:3-4;Ex.30).   That denial was subsequently *per curiam* affirmed on appeal. Davis v. State, 961 So.2d 955 (Fla. 4th

DCA 2007)(table); (DE#17:Ex.32).

It does not appear from the record that the depositions in this case were taken for the purpose of perpetuating testimony to be introduced at trial, nor has the petitioner alleged that this was the purpose for the depositions taken in this case. Therefore, under Florida's general rule of criminal discovery, Fla.R.Cr.P. 3.220, the petitioner clearly had no unconditional right to be physically present during the taking of the discovery depositions in his case. See Fla.R.Cr.P. 3.220(h)(7).

Florida's discovery rule, as it relates to pretrial discovery depositions, provides as follows:

> (7) Defendant's Physical Presence.–A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule. The court may order the physical presence of the defendant on a showing of good cause. The court may consider (A) the need for the physical presence of the defendant to obtain effective discovery, (B) the intimidating effect of the defendant's presence on the witness, if any, (C) any cost or inconvenience which may result, and (D) any alternative electronic or audio/visual means available.

Fla.R.Cr.P. 3.220(h)(7).

Consequently, the state trial court's decision denying relief was objectively reasonable, and did not result in a decision that was contrary to, or involved an unreasonable application of, the Strickland standard, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even if the petitioner had been present at the depositions, no showing has been made that this would have, in fact, altered the outcome of the trial, especially in light of the petitioner's identification by numerous eyewitnesses to the incident. Thus, the state court's

rejection of this claim should not be disturbed here. <u>Williams v.</u>
<u>Taylor</u>, <u>supra.</u>

In **claim two**, the petitioner asserts that he is entitled to
vacatur of his conviction based on the prosecution's <u>Brady</u>[8]
violation. According to the petitioner, the prosecution withheld
the hospital records and photographs of the victim's injury which
he claims without further elaboration that they would have provided
exculpatory information. (DE#17:Ex.25:4).

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court
established three criteria a criminal defendant must prove in order
to establish a violation of due process resulting from the
prosecution's withholding of evidence.  Specifically, the defendant
alleging a <u>Brady</u> violation must demonstrate (1) that the
prosecution suppressed evidence, (2) that the evidence suppressed
was favorable to the defendant or exculpatory, and (3) that the
evidence suppressed was material. <u>United States v. Severdija</u>, 790
F.2d 1556, 1558 (11 Cir. 1986). This duty covers not only
exculpatory material, but also information that could be used to
impeach a key government witness. <u>Giglio v. United States</u>, 405 U.S.
150, 154 (1972). Evidence is material "only if there is a
reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different."
<u>United States v. Stewart</u>, 820 F.2d 370, 374 (11 Cir. 1987),
<u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). A
'reasonable probability' is a probability sufficient to undermine
confidence in the outcome. <u>United States v. Alzate</u>, 47 F.3d 1103,
1109-1110 (11th Cir. 1995), <u>quoting</u>, <u>United States v. Bagley</u>, 473
U.S. 667, 682 (1985).

---

[8]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

In this case, the petitioner cannot satisfy any prong under Brady. First, as correctly argued by the prosecution in the Rule 3.850 proceeding, the claim is not only legally insufficient, but also fails on the merits. First, no showing has been made either in the state forum or this habeas proceeding that the subject evidence regarding the victim's injury was exculpatory, much less material. To the contrary, at trial, the jury was able to observe first hand the scar left by the gash caused by the petitioner, which resulted in the victim receiving 23 stitches. Moreover, the record reveals that the defense was adequately prepared for trial regarding the victim's injury in that Palmer was not only deposed by the defense (DE#18:Ex.37-Depo.Palmer:24-37), but also Palmer was questioned at length both during his deposition and at trial regarding the nature of his wound and the medical care received. (T.359-362). Likewise, other prosecution witnesses testified regarding this event, and their observations of the wound itself. (T.176-184,196,226-229,260-62,293-94). It is therefore evident that even if the prosecution failed to disclose the subject information, this would not have affected the outcome of the trial. Rather, it might have been more inculpatory than exculpatory because it would have affirmed the victim's testimony regarding the nature and extent of his wounds.

When the claim was raised in the Rule 3.850 proceeding, the trial court denied the claim based on the state's response thereto, which argued in pertinent part as follows:

> ...The State would contend this claim is legally insufficient. There was has been no showing that the State possessed and/or 'withheld' these matters from the defense, and it is clear that the defense could have obtained these records through due diligence, given the fact that Davis' counsel deposed the victim, Henry Palmer, and Palmer testified in detail concerning his wound and the medical treatment he had received for it....
>
> Further, the State would contend that Davis has failed to demonstrate that these matters were at all material. While the defendant was charged with aggravated battery,

16

the prosecution's theory was that Davis had committed such act by his use of a deadly weapon, to-wit: a box cutter, to slash the victim, and/or his causing the victim permanent disfigurement, by virtue of the fact that the slash that the defendant had made to the victim's chest, with said box cutter, had resulted in a permanent scar....Davis has failed to demonstrate that the contents of Palmer's medical records would have contained any material evidence which would have created a reasonable probability of a different trial result, and, accordingly, this claim for relief should be summarily DENIED in all respects.

(DE#17:Ex.37:4-5).

Under the totality of the circumstances present here, even if the prosecution had produced the photographs of the victim's injury and the hospital records where the victim received treatment for his injury, and further assuming counsel had introduced this evidence at trial, no showing has been made that it would have affected the guilt phase portion of the trial. Consequently, the rejection of the claim in the state forum was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

To the extent the petitioner further argues that the evidence was essential to discredit or otherwise impeach the eyewitnesses, no showing has been made in the state forum or in this habeas proceeding that any of the witnesses testified falsely nor that the prosecution suborned perjury. A different and more defense-friendly standard of materiality applies where the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony. Where either of those events has happened, the falsehood is deemed to be material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97,

103 (1976) (emphasis added); accord, Giglio v. United States, 405 U.S. 150, 154 (1972); Napue v. Illinois, 360 U.S. 264, 271 (1959). As the Supreme Court has held, this standard of materiality is equivalent to the Chapman v. California, 386 U.S. 18, 24 (1967), "harmless beyond a reasonable doubt" standard. Bagley, 473 U.S. at 679, n. 9. In this case, no such showing has been made. The victim testified regarding his recollection of the events, and was subject to vigorous cross-examination by the defense. Even if, as maintained by the petitioner, these items had been provided, no showing has been made that it would have differed from the testimony adduced at trial. To the contrary, it is not unreasonable to conclude that the evidence would have been more harmful than beneficial to the defense. Consequently, this claim fails on the merits and  should not be disturbed here. See Williams v. Taylor, supra.

In **claim three**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to make a contemporaneous objection to strike a prospective juror, and for failing to move for a mistrial prior to the jury being sworn in. According to the petitioner, venireperson Raphael Santiago gave an unfavorable answer to a voir dire question, which should have resulted in the entire venire panel being dismissed. (DE#25:5).

The trial transcript reveals that venireperson Santiago initially indicated during questioning by the prosecutor that, given his profession as a television cameraman, he could not be impartial because "the chances are that individuals who are appearing in criminal court are on the wrong side of the law." (T.59). Immediately thereafter, a motion was made by counsel for another defendant, joined in by petitioner's counsel, to strike the panel and for a mistrial, but the request was denied by the trial court as premature, who then read the presumption of innocence

instruction to the venire panel. (T.59-63,88-127). Moreover, petitioner's counsel inquired of the panel whether anyone else shared Santiago's views, to which prospective juror Ruoss stated he agreed with Santiago, but that he could "presume innocence." (T.89). Review of the record reveals that no other prospective juror agreed with Santiago's views, nor did they indicate an inability to follow the court's presumption of innocence instruction, as well as the burden of proof. Moreover, Ruoss was stricken by the prosecution and Santiago was stricken by the defense. (T.116-17).

Furthermore, at the conclusion of the jury selection process, but prior to their being sworn in, a colloquy was conducted on the record wherein the petitioner, in response to the court's questions, indicated under oath that he was satisfied with the jury selection process, but for jurors Seabright and Solberg, and was satisfied with counsel's services in this regard. (T.124-125). At no time did the petitioner express discontent with counsel's actions regarding Santiago and Ruoss.

Under these circumstances, where the jurors in question were stricken from the panel, and where the other prospective jurors indicated that they could follow the court's presumption of innocence instruction, no showing has been made in the state forum nor in this habeas proceeding that further argument by counsel regarding striking the entire venire panel or seeking a mistrial would have been successful. Consequently, absent a showing of prejudice under Strickland, the state postconviction court's conclusion that "it is entirely speculative whether any renewed motion to strike the panel would have been granted, especially as the record fails to offer any support for such motion," and therefore "no viable claim of ineffective assistance of counsel has been presented," is neither contrary to nor an unreasonable

application of federal constitutional principles. <u>Strickland</u>, <u>supra</u>. Consequently, this claim should be denied. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim four,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to subpoena eye-witness Karen Duffy and Raul Gomez to testify as defense witnesses at trial. According to the petitioner, these two witnesses' account of the incident was entirely at odds with that of the victim. (DE#17:Ex.25:6-7).

The petitioner has provided no affidavit in the state forum, nor in this habeas proceeding, to establish that the witnesses would have testified favorably for the defense. Such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

To the contrary, as conceded correctly by the petitioner in the state forum, counsel was not ineffective for advising him that these witnesses would have provided corroboration that the petitioner was, in fact, in an altercation with the victim Palmer. Federal law clearly holds that tactical or strategic choices like the one complained of here cannot support a collateral claim of ineffective assistance. <u>McNeal v. Wainwright</u>, 722 F.2d 674 (11 Cir. 1984); <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>see also United States v. Hughes</u>, 635 F.2d 449, 452 11th Cir. 1981).

When the claim was raised in the Rule 3.850 proceeding, the trial court denied the claim based on the prosecution's response, which argued in pertinent part as follows:

> ...The record reflects that prior counsel had deposed all three of these individuals, and that none of them

> could have offered testimony which would have materially
> impeached the victim. (See Attachment D; Depositions of
> Kareyn Duffy, Raul Gomez and Pedro Leon). Further, it
> should be noted that, at the trial, Davis not only
> declined to testify on his own behalf, but also stated
> that he did not wish defense counsel to present another
> available witness, because he wished defense counsel to
> maintain the 'sandwich' closing argument position (see
> Attachment A; Transcript at R336-340), an option he
> would have lost, had these witnesses testified.
> Accordingly, no viable claim of ineffective assistance
> of counsel has been presented, and this claim for relief
> should be summarily DENIED in all respects.

(DE#17:Ex.29:6-7).

Independent review of the depositions attached to the prosecution's Rule 3.850 response reveals that the subject witnesses recounted their observation that the petitioner was, in fact, engaged in an altercation with Palmer, swinging something at him. (See: Depo. Duffy:11; Depo.Gomez:9-10). Under these circumstances, counsel's strategic decision not to call these witnesses should not be second-guessed here. Moreover, these witnesses would not have cast doubt on the evidence adduced at trial so that there testimonies would not have affected the guilt phase portion fo the trial. Consequently, no prejudice has been established pursuant to Strickland resulting from counsel's failure to call them to testify as a defense witnesses.

Finally, the petitioner's proffered testimony that the witnesses would have provided contradictory evidence regarding their recollection of the incident does not alter the outcome of the proceedings, given the evidence adduced at trial. See Fugate v. Head, 261 F.3d 1206, 1239, n.54 (11th Cir. 2001)(fact that other witnesses could have been called proves only that short-comings of trial counsel can be identified, while shortcomings can be identified, perfection is not the standard of effective assistance). Thus, the state court's rejection of this claim should not be disturbed here. Williams v. Taylor, supra.

In **claim five,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object to Detective Constanzo's testimony regarding the extent and severity of the victim's injury. According to the petitioner, the detective should have been precluded from testifying in this regard because the detective was not a "medical expert." (DE#17:Ex.25:7).

When the identical claim was raised in the Rule 3.850 proceeding, it was denied based on the state's response, which argued that the claim was "legally insufficient" because the record reflected that the detective was dispatched to the scene and testified as to his own observations of Palmer's wound. (DE#17:Ex.29:7). This conclusion was not error, as the record reveals that the detective indicated that Palmer received "a laceration to his left pec, probably about four or five inches long and cut all the way down to the muscle." (T.294). According to the detective, he observed that the wound was "wide open, probably about two inches and you could see, you know, cut through the skin through the fat layer and then the actual muscle, you could see underneath." (T.294). During cross examination, the detective acknowledged that in his incident report "minor laceration" was reflected regarding the victim's injuries, but explained that if "you don't hit the box right, you get what you don't want." (T.300). However, during redirect, the detective further clarified that in the report, he did detail the nature and extent of the injury the victim received, including that the victim had received stitches and was transported by ambulance to the hospital. (T.304).

On the record before this court, no prejudice has been established arising from counsel's failure to further object to or cross-examine the detective regarding his recollection of the victim's injury. Moreover, the defense capitalized on the reference

to a "minor laceration" during closing argument in support of the theory that the prosecution had failed to establish the charge of aggravated battery. However, as was the prerogative of the jury, it rejected the defense presented and instead believed the strong evidence admitted by the state. Consequently, the rejection of the claim in the state forum was not contrary to nor an unreasonable application of federal constitutional principles and should therefore not be disturbed here. Williams v. Taylor, supra.

In **claim six**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to secure the Home Depot surveillance video and have it played to the jurors. According to the petitioner, had this video been introduced into evidence at trial, the jury could have viewed it and then weighed the credibility of the prosecution witnesses. (DE#17:Ex.25:8).

The claim was rejected by the trial court, based on the prosecution's response that it was "legally insufficient" and alternatively, that no showing had been made that an actual videotape of the incident exists." (DE#17:Ex.26:7). To the contrary, the victim explained that the store had surveillance cameras inside the store, but none outside, which is where the incident occurred. (T.175-78,206-07). Consequently, on the record before this court, neither deficient performance nor prejudice has been established arising from counsel's failure to pursue this issue. The state court's rejection of the claim should not be disturbed here. Williams v. Taylor, supra.

In **claim seven,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to subpoena the emergency room physician who treated the victim in order to establish that the victim's injuries were minor, and not the result of being slashed.

As in claim four above, the petitioner has provided no affidavit in the state forum, nor in this habeas proceeding, to establish that the physician would have testified as proffered. Such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

To the contrary, it is evident that the laceration was not minor as it required 23 stitches, both internally and externally. In fact, the physician's testimony in this regard could have actually hurt the defense because it would have drawn attention to the gruesome nature of the injury and whether it could have been fatal or not. Federal law clearly holds that tactical or strategic choices like the one complained of here cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); see also United States v. Hughes, 635 F.2d 449, 452 11th Cir. 1981).

When the claim was raised in the state Rule 3.850 proceeding, it was denied on the finding that the petitioner had failed to establish that had the physician been called, the outcome of the proceeding would have been different. (DE#17:Ex.29-30). In other words, that the petitioner would have been acquitted of all charges. Under the circumstances present here, that finding was not error and should not be disturbed here. Williams v. Taylor, supra.

In **claim eight,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to request an additional peremptory challenge during the jury selection process, after exhausting the ten challenges provided by the court. According to the petitioner, counsel should have requested an additional challenge so that the defense could strike one

additional prospective juror from the venire panel. (DE#17:Ex.25:9-10).

As the United States Supreme Court has recently reaffirmed, there is no constitutional right to peremptories or any specific number of them. Rivera v. Illinois, ___ U.S. ___, 129 S.Ct. 1446 (Mar. 31, 2009). Peremptory challenges are not constitutionally protected fundamental rights. Ross v. United States, 487 U.S. at 88. Rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial. Georgia v. McCollum, 505 U.S. 42, 57 (1992). See also United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000). Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution. Ross v. United States, 129 S.Ct. at 1454 quoting, Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982)(internal quotation marks omitted); see also, Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991). As the Supreme Court has noted, the Due Process Clause, safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial." Spencer v. Texas, 385 U.S. 554, 563-564 (1967). The Supreme Court has also repeatedly stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial. See Frazier v. United States, 335 U.S. 497, 505, n. 11 (1948); United States v. Wood, 299 U.S. 123, 145 (1936). Florida law provides both cause and peremptory challenges to both sides involved in criminal proceedings. See Busby v. State, 894 So.2d 88, 98 (Fla. 2004).

Review of the record here indicates that during jury selection, defense counsel had already used all of its peremptory challenges, when it requested that the court allow him to

backstrike[9] a potential juror Solberg. (T.121-123). The defense requested that the court permit him to withdraw a peremptory challenge against potential juror Solberg so that the peremptory could then be used to strike venireperson Seabright. (T.123). However, the trial court denied the request. (Id.). Moreover, the record reveals that the defense did not ask for additional peremptory challenges.

When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court based on the prosecution's response, which argued in pertinent part that the claim was "legally insufficient," and further argued that:

> Davis has not identified what juror allegedly 'should' have been stricken with this challenge, or alleged, or demonstrated, that the absence of this challenge resulted in the seating of an actually biased juror. See e.g., Jenkins v. State, 824 So.2d 977 (Fla. 4th DCA 2002), rev. den'd, 842 So.2d 844 (Fla. 2003). Accordingly, no viable claim of ineffective assistance of counsel has been set forth, and this claim for relief should be summarily DENIED in all respects.

(DE#17:Ex.29:8-9).

That decision was subsequently per curiam affirmed on appeal. Davis v. State, 961 So.2d 955 (Fla. 4 DCA 2007)(table); (DE#17:Ex.32).

It is true that the petitioner neither alleged nor demonstrated in relation to this claim which juror it wanted to strike, nor how the juror was biased. This court assumes for purposes of this claim that it was juror Seabright that it wanted stricken as evident by the trial record. However, the fact that

---

[9]In Florida, backstriking is the term commonly used to describe a peremptory challenge of a juror who has been previously accepted by the challenging party. See i.e., Dobek v. Ans, 475 So.2d 1266 (Fla. 4 DCA 1985).

Seabright sat on the jury did not produce an impartial jury or a constitutional error. The petitioner never challenged Seabright for cause in the trial court, only asserting at the conclusion of jury selection that an additional peremptory challenge was needed to strike Seabright as an undesirable juror. (T.122-126). There is no indication whatever that juror Seabright was not impartial. The petitioner has failed to establish that his constitutional right to an impartial jury was violated. Moreover, even if counsel had requested an additional peremptory challenge, no showing has been made either in the state forum or this habeas proceeding that the court would have granted the request thereby enabling the petitioner to strike Seabright. Thus, no prejudice pursuant to Strickland has been established arising from counsel's failure to pursue this issue. Therefore, the denial of the claim in the state Rule 3.850 should not be disturbed here. Williams v. Taylor, supra.

In **claim nine,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to impeach the victim with a prior, inconsistent, spontaneous statement he gave to the investigating officers minutes after the incident. (DE#17:Ex.25:10). Neither in the state forum nor in this habeas proceeding does the petitioner identify the spontaneous statement that should have been used to impeach the victim during trial. Such a conclusory allegation is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

When the identical claim was raised in the state forum, it was denied by the trial court based on the state's response which argued that the claim was "legally insufficient" and, therefore, summary dismissal was warranted. (DE#17:Ex.29:9).

Trial counsel did in fact challenge various portions of the state witnesses' trial testimony as contradictory to the that

witness' earlier deposition testimony or contradictory with trial testimony of other witnesses. Trial counsel advised the jury during closing argument that all these discrepancies should be considered in conjunction with the lack of physical evidence. Thus, counsel's performance cannot be deemed deficient for failing to point out each and every possible inconsistency, regardless how slight. See Jones v. Cain, 227 F.3d 228, 230-31 (5 Cir. 2000)(holding that defense counsel's failure to impeach prosecution witnesses with their inconsistent statements in police reports did not constitute ineffective assistance of counsel, where alleged discrepancies between testimony of witnesses and data in police report approached inanity).

Even if this Court were to assume for purposes of this federal proceeding that counsel's performance was deficient as alleged, the petitioner is not entitled to relief in that he cannot satisfy the Strickland prejudice-prong.[10] Given the entire cross-examination of all state witnesses, and strong closing argument which emphasized the various inconsistencies in the case (T.348-358), the petitioner has not shown a reasonable probability that the outcome would have been different had trial counsel cross-examined and/or otherwise impeached the victim with an unidentified spontaneous statement. Strickland, 466 U.S. at 694. To the contrary, review of the record reveals that counsel vigorously cross-examined the victim drawing particular attention to inconsistencies in his testimony and statement, as well as, in relation to the testimonies provided by other witnesses. (T.200-03,208-10,213-15). Counsel's performance was not constitutionally ineffective, and even if so, no prejudice

---

[10]The prejudice component of the Strickland test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id.

has been established in this regard.

In conclusion, the denial of postconviction relief by the trial court on the identical grounds of ineffective assistance of trial counsel raised here, which rulings were affirmed by the state appellate court, were not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles, ____ U.S. ___, 129 S.Ct. at 1420.

In **claim ten,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer misadvised him regarding the prosecution's use of the petitioner's prior convictions during trial if he exercised his constitutional right to testify on his own behalf. According to the petitioner, counsel misadvised him that, if he testified, details surrounding his prior convictions would be revealed to the jury, including the fact that two of the priors were at the same Home Depot store. (DE#17:Ex.26:2). He further claims counsel intimidated and/or otherwise coerced him into waiving his right to testify.

When the identical claim was raised in the Rule 3.850 proceeding, the trial court denied the claim based on the state's response, which argued in pertinent part as follows:

> ...The State would contend that this matter is legally insufficient, and that Davis' failure to formally proffer the nature of any trial testimony he could have offered renders this claim subject to summary denial under such precedents as Oisorio v. State, 676 So.2d 1363 (Fla. 1996) and Jackson v. State, 711 So.2d 1371 (Fla. 4th DCA 1998). More importantly, however, is the fact that this matter is refuted by the record. The record reflects that this Court conducted an extremely detailed colloquy with Davis concerning his decision whether or not to testify....Thus, as the record

> reflects that, despite any alleged misadvisement by counsel, Davis was aware that the jury would not learn the nature of his prior convictions should he testify, this claim for relief should be summarily DENIED in all respects.

(DE#17:Ex.29:9-10).

The denial of this claim by the state court was affirmed on appeal. Davis v. State, 961 So.2d 955 (Fla. 4 DCA 2007)(table); (DE#17:Ex.32).

It is well settled that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). Thus, every criminal defendant is privileged to testify in his own defense, or refuse to do so. Faretta v. California, 422 U.S. 806, 834 n. 45 (1975), quoting, Harris v. New York, 401 U.S. 222, 225 (1971). The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. Teague, 953 at 1533; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534; Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

As long as an attorney advises a petitioner of his right to testify and does not prevent a petitioner from testifying, his

30

strategic decision not to call petitioner as a witness is entitled to great deference. See Gallego v. United States, 174 F.3d 1196, 1197 (11 Cir. 1999)(noting that ineffective assistance of counsel occurs when "counsel refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify").

Review of the record indicates that after the state had rested and after the petitioner's motion for judgment of acquittal was denied, the trial court conducted an extensive colloquy on the record, advising the petitioner of his constitutional right to present evidence and witnesses at trial, and to testify on his own behalf. (T.335-336). When asked whether he wanted to testify on his own behalf at trial, the petitioner stated on the record that he would not be testifying on his own behalf. (T.336). Thus, after being fully advised of his right to testify, the petitioner affirmatively stated on the record that he had elected not to testify at trial. Moreover, such advice of counsel was clearly reasonable under the circumstances, amounting to proper trial strategy, given the fact that the petitioner's credibility certainly would have been subject to attack by the prosecution. See Strickland, 466 U.S. at 689-91; United States v. Costa, 691 F.2d 1358, 1364 (11 Cir. 1982). Further, it appears that counsel's decision against calling witnesses and presenting evidence at trial may have been a strategic decision so that the defense would be afforded both the first and last closing arguments to the jury. This Court must be highly deferential to such strategic decisions of counsel, which decision was reasonable under the circumstances of this case, not amounting to constitutionally ineffective representation. See Kelley v. Secretary for Dept. of Corrections, 377 F.3d 1317, 1353 (11 Cir. 2004)(finding petitioner not prejudiced by any deficient performance by counsel where counsel adequately investigated case, and counsel elected, as matter of

31

defense strategy, to not put on defense witnesses so that they might take advantage of state procedural rule allowing defendant to make first and last closing arguments when defense is not presented), cert. denied, 545 U.S. 1149 (2005).

Even if this Court were to find that counsel's advice to the petitioner regarding his right to testify was in someway deficient, the petitioner has not been prejudiced by the alleged deficient performance of counsel.[11] Through strong cross-examination of the state witnesses and during an impassioned closing argument, defense counsel vigorously pursued the defense that the state had failed to prove beyond a reasonable doubt that the petitioner had committed the crimes for which he had been charged, and was, in fact, innocent, drawing particular attention to the inconsistencies in the victim's testimony. In fact, the jury acquitted on one of the two offenses.

As was the prerogative of the jury, it rejected the defense presented as to the aggravated battery charge and instead believed the strong evidence admitted by the state, which included testimony of the victim and observation of the slash inflicted upon the victim by the petitioner. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. at 326. In light of the strong evidence admitted at trial, there is no reasonable probability that the result of the proceeding would have been different had the petitioner testified and made a blanket assertion of innocence.[12]

_____

[11]To show prejudice, a petitioner must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." Strickland v. Washington, 466 U.S. 668, 693 (1984).

[12]The petitioner has not alleged either in the state forum nor in this habeas proceeding what the substance of his testimony would have been had he testified at trial. This court can only speculate that the petitioner would have

Counsel's performance was not constitutionally ineffective, as alleged. <u>See</u> <u>Strickland</u>, <u>supra</u>. Consequently, the state court's rejection of this claim should not be disturbed in this collateral proceeding. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim eleven,** the petitioner asserts that his constitutional rights were violated by the court who delegated to the prosecution the discretion to rule on a crucial request from the defense.

The claim was raised in the petitioner's Rule 3.850 proceeding, and denied by the state court, based on the state's response thereto, which argued correctly that the claim could have been, but was not raised on direct appeal, and therefore was procedurally barred from review in the collateral proceeding. (DE#17:Ex.29:10-11).

It is well established in Florida that claims that could have, and should have, been raised on direct appeal are procedurally barred from collateral review. The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of claims will bar federal review of those claims in a subsequent federal habeas corpus proceeding. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Sims v. Singletary</u>, 155 F.3d 1297, 1311 (11 Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. <u>See</u> <u>Lindsey v. Smith</u>, 820 F.2d 1137 (11 Cir. 1989). <u>See also</u> <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11 Cir. 1997)(holding that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

---

maintained his innocence. Such a conclusory allegation is subject to summary dismissal. <u>Machibroda</u>, <u>supra</u>.

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the court issues only a one-sentence denial of relief. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman v. Thompson, 501 U.S. 722, 735-36, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11 Cir. 1995)(applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11 Cir. 1993)(applying bar where state court did not rule on claims presented).

"[W]hen it is obvious that the unexhausted claim would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal quotation marks omitted). The federal court must apply a procedural bar to the claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, Harris v. Reed, 489 U.S. 255 (1989), or are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991). Thus, the claim is unexhausted and procedurally barred from review here.

To overcome a bar, the petitioner must establish either cause and prejudice or a fundamental miscarriage of justice exception to justify its review. O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999); see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). No such showing has been made here.[13]

---

[13]Even if it were not barred, the claim appears to be a reiteration of the arguments raised in connection with claims three and eight above and should be denied for the reasons expressed therein. The trial court did not err in inquiring of the prosecution if it had any objections to the defense's request

In **claim twelve,** the petitioner asserts that the prosecution withheld crucial evidence in violation of <u>Giglio</u>[14]. According to the petitioner, the prosecution presented perjured testimony at trial when it allowed Deputy Monica Jean to testify that she did not know whether the petitioner had been taken to the hospital afer his arrest. (DE#17:Ex.26:5-6). The petitioner maintains this testimony directly conflicted with Deputy Jean's deposition testimony wherein she declared that the petitioner had not been taken to the hospital. (<u>Id</u>.).

The claim was rejected by the trial court in the Rule 3.850 motion based on the state's response which argued in pertinent part that the claim was legally insufficient as the petitioner's allegation failed to demonstrate the prosecution knowingly presented perjured testimony. (DE#17:Ex.29:11). Moreover, independent review of the record reveals that Deputy Jean's testimony was not perjurious. To the contrary, the trial court record reveals that Deputy Jean could not recall whether the petitioner had been taken to the hospital. There is nothing of record in the state forum nor in this habeas proceeding to establish that the prosecution knowingly suborned perjury, nor that the subject statement was material.

Success on a claim of prosecutorial misconduct requires a showing that the conduct infected the trial with unfairness as to make the resulting conviction a denial of due process. <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987)(<u>quoting</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). The conduct must be examined to determine "whether, considered in the context of the entire trial,

---

to backstrike a prospective juror. Under the circumstances present here, the error was at best harmless. Thus, the petitioner is entitled to no relief on this claim.

[14]<u>Giglio v. United States</u>, 405 U.S. 150 (1972).

that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9 Cir. 1990). The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). The Supreme Court has stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). Thus, the federal habeas court must determine whether the prosecutor's actions were so egregious that his misconduct amounted to a denial of constitutional due process. Id.

Of course, a defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). To succeed in showing a due process violation from the prosecution's failure to disclose material exculpatory evidence, the petitioner must establish that (1) evidence was suppressed, (2) the evidence was favorable to the defense, and (3) the evidence was material either to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Undisclosed evidence is material if there exists a reasonable probability that the result of the proceedings would have been different had the evidence been disclosed to the defense. See East v. Johnson, 123 F.3d 235, 237 (5 Cir. 1997).

The claim regarding perjured testimony and/or prosecutorial misconduct is meritless. The record does not support the petitioner's claim that Detective Jean testified falsely regarding her recollection of whether the petitioner had been taken to the

36

hospital after his arrest. It is evident that the state trial and appellate courts properly rejected the petitioner's claim. Since the record does not support the petitioner's claim of perjury or prosecutorial misconduct in that the petitioner has failed to demonstrate that the prosecutor knowingly presented false testimony and since the petitioner has not demonstrated that the actions of the prosecutor infected the trial with unfairness, the petitioner has not been denied constitutional due process. Since the rejection of the claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, the state court determinations should stand. 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra.

In conclusion, there is no evidence whatever of perjured testimony and/or false evidence and/or prosecutorial misconduct. The fact that the petitioner takes issue with the testimony of certain state witnesses does not mean that such testimony was untruthful or a product of misconduct on the part of the state. Moreover, the witnesses were subject to cross-examination by defense counsel regarding their credibility and the reliability of their testimony, and defense counsel in fact conducted a thorough and forceful cross-examination of such witnesses. It is apparent that the jury rejected the defense presented and, instead, believed the state's theory and strong evidence presented by the state, as was its prerogative. Thus, the petitioner is not entitled to federal habeas corpus relief on any prosecutorial misconduct claim. Therefore, the state court's denial of this claim is in accord with federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim thirteen**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the prosecutorial misconduct during closing argument.

37

The purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. See United States v. Iglesias, 915 F.2d 1524, 1529 (11 Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by the court. See Chandler v. Florida, 449 U.S. 560, 574 (1981)("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). See also Ward v. State, 765 So. 2d 299, 300 (Fla. 5 DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); Laboo v. State, 715 So. 2d 1034, 1035 (Fla. 1 DCA 1998)(prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel). Thus, argument urging the jury to decide the matter based upon factors other than those it is instructed to consider is improper. The Courts have, therefore, condemned argument that is inflammatory or appeals to bias or prejudice. United States v. Childress, 58 F.3d 693, 715 (D.C. Cir. 1995), cert. denied, 516 U.S. 1098 (1996)("It is well established that a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence."). Further, it is beyond dispute that an expression by the prosecutor of his or her own belief in the defendant's guilt is improper. See Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. De Christoforo, 416 U.S. 637 (1974)).

Specifically, the petitioner objects to the following sets of remarks made by the prosecutor during closing argument:

> ...I don't think Henry Palmer would agree with Ms. Achille
> that that slash across his chest is not a permanent injury.
> I'm sure Henry Palmer doesn't think like having that giant
> scar across his chest....

(T.359).

...I'm not saying anything negative about Mr. Maharaj. To him that's his recollection. The important thing to remember here is this is not an everyday occurrence, it's not an everyday occurrence at Home Depot that someone comes in arming themselves with a deadly weapon and slices open the chest of one of their employees. Is it a startling event--absolutely. It's going to be remembered by different people in different ways. You got to hear from them all....

(T.371-372).

...There is no reasonable doubt that that is the man that touched or struck Henry Palmer and caused permanent disfigurement, but you can even find him guilty if you say how Ms. Achille said, he can go get plastic surgery, it's not permanent. You can find him guilty if you want to go the other way. Did he touch or strike Henry Palmer and when he did so, did he do it with a deadly weapon. Yes, that blade, that knife, that box cutter is a deadly weapon. So that is another way that he's guilty of aggravated battery which is Count One in the Information.

(T.362).

Review of the prosecutor's closing argument in its entirety reveals that the prosecutor's remarks were tied to a summary of the evidence presented at trial, and inferences derived therefrom, and a discussion of the applicable law. The comments were also made in direct response to the defense's theory that the state had not proved beyond a reasonable doubt that the petitioner slashed the victim with a box cutter in that most of the state's witnesses suffered from credibility problems, and the physical evidence did not link the petitioner to the crime. When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment does not require a new trial. See United States v. Granville, 716 F.2d 819, 822 (11 Cir. 1983). Here, in no way, did the prosecutor present his personal opinion as to the petitioner's guilt and, even if such comments could be so interpreted by the jury, they were based upon evidence in the record.

The issue of credibility of both state and defense witnesses

was indeed central to the case here, and the prosecutor's remarks as a whole were proper as a response to the defense's repeated attacks on the state witnesses' credibility. The remarks were not vouchers for the truthfulness of the subject witnesses' testimony. When reviewing the relevant portions of the trial transcript, it is apparent that the prosecutor did not indicate any personal belief in the witnesses' credibility or improperly bolster or vouch for the credibility of any witness nor did the state place the prestige of the government behind any witness or make explicit or implicit assurances of the witnesses' veracity. Further, as indicated, the state did not argue for any witnesses' candor based upon evidence that was not presented to the jury. The state merely did its job by arguing that the evidence supported the state's theory, not the defense's theory, and urging the jury to believe the state witnesses' testimony. See e.g., United States v. Granville, 716 F.2d 819, 822 (11 Cir. 1983)(finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence, the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another); United States v. Johns, 734 F.2d 657, 663 (11 Cir. 1983)(noting that the State may present its "contention as to the conclusions the jury should draw from the evidence"). See also Davis v. Singletary, 853 F.Supp. 1492, 1560 (M.D.Fla. 1994), aff'd, 119 F.3d 1471 (1997), cert. denied, 523 U.S. 1141(1998)(finding that "[i]n response to an attack on the government and the conduct of its case, a prosecutor may present what even amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon the government or its witnesses.")(citation omitted).

Contrary to the petitioner's assertion, the prosecutor did not mislead the jury as to the burden of proof and/or in any way shift

the burden of proof to the petitioner, which is clearly improper under both federal and state law principles. See e.g., <u>Duncan v. Stynchcombe</u>, 704 F.2d 1213, 1215-16 (11 Cir. 1983); <u>United States v. Downs</u>, 615 F.2d 677, 679 (5 Cir.1980); <u>Jackson v. State</u>, 575 So.2d 181 (Fla. 1991)(when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof); <u>Atkins v. State</u>, 878 So.2d 460 (Fla. 3 DCA 2004)(state improperly shifted the burden of proof when it implied that the defendant needed to prove that the victim was lying in order to receive acquittal); <u>Northard v. State</u>, 675 So.2d 652, 653 (Fla. 4 DCA 1996)(prosecutor's argument was impermissible because it asked the jury to determine who was lying as the proper test of determining guilt).

It is important to note that there is no indication whatever that the prosecutor made any or all of the subject comments in a deliberate attempt to distract the jury from the issue of the petitioner's guilt or mislead the jurors as to issues of guilt or innocence. However, even if this Court were to view one or more of these now-challenged comments as improper for any or all the reasons claimed, when taken together or separately, these arguments did not so invade the province of the jury to render the trial fundamentally unfair, requiring a new trial.[15] See <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)(improper prosecutorial comment not reversible error unless remarks "so infect the trial with unfairness as to make the resulting conviction a denial of due

---

[15]The long-standing standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert. denied</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11 Cir.), <u>cert. denied</u>, 485 U.S. 964 (1988).

process"); <u>Strickland v. Washington</u>, 466 U.S. at 695 (to find
prejudice for purposes of ineffective assistance claim, court "must
consider the totality of the evidence before the judge or jury").
There was strong evidence against the petitioner, which included
the testimony of numerous witnesses to the altercation.

This Court also points out that any potential prejudice was
diminished by the trial court's clear and correct instructions to
the jury regarding the criminal offense charged, the burden of
proof, and the reliability of evidence. The court further
instructed the jury that it could believe or disbelieve all or any
part of the evidence presented or the testimony of any witness. The
court repeated throughout the trial that what the lawyers said
during opening statement and closing argument was not evidence in
the case and should not be considered as such. It is generally
presumed that jurors follow their instructions. <u>See, e.g.</u>,
<u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987). Thus, there is no
reasonable probability that the result of the trial would have been
different if these arguments had not occurred or if counsel had
lodged objections to all the remarks.

Trial counsel was, therefore, not constitutionally ineffective
in failing to object to the comments, or failing to move for a
mistrial based on the above-mentioned remarks by the prosecutor. It
would have been futile for counsel to have done so, given the "wide
latitude" accorded counsel in making closing arguments. Florida law
affords wide latitude to counsel in closing arguments. <u>See</u>
<u>Breedlove v. State</u>, 413 So.2d 1, 8 (Fla. 1982). <u>See also</u> <u>Ford v.</u>
<u>State</u>, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial
based on prosecutorial comments is appropriate only where a
statement is so prejudicial that it vitiates the entire trial).
Counsel has no duty to raise issues which have little or no chance
of success. <u>See generally</u> <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11

Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

Accordingly, the state trial court's denial of the ineffective assistance of trial counsel claim raised in this federal petition, which ruling was affirmed by the state appellate court, did not constitute a decision that was contrary to or an unreasonable application of Strickland. The petitioner is therefore not entitled to habeas relief. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In **claim fourteen,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer made improper comments during closing argument. According to the petitioner, he instructed counsel not to make any reference to plastic surgery in relation to the victim's injury because such statement would prejudice the defense. (DE#17:Ex.26:4).

Specifically, the petitioner maintains the following statement made by the defense was highly prejudicial:

> ...On the date of the incident, April 7, 2003, I asked
> Deputy Constanzo comes in here today to testify, this is
> a trial and he knows that the State has very high burden
> in this case. He tells you today oh no, it wasn't a
> minor laceration. In his report on the date of the
> incident, he wrote that report the very same day. HE

> wrote minor laceration. Now, State wants you to take the word of its witness that it was a minor laceration and wants you to make this great leap of faith into permanent disability, permanent injury, or some type of great disfigurement. **And we know with modern technology and medicine that a scar can be removed with plastic surgery.** So what is the permanent disability? What is the great disfigurement that the State is asking you to find beyond and to the exclusion of every reasonable doubt....

(T.356).

In the Rule 3.850 proceeding, the trial court denied relief based on the prosecution's response thereto which argued in pertinent part that the claim was legally insufficient, as "the argument was a permissible attack upon the sufficiency of the evidence for aggravated battery, and the defendant was not unduly prejudiced by the State's reply." (DE#17:Ex.29:12). Moreover, the trial court also adopted the prosecution's argument that the petitioner had failed to demonstrate that "any reasonable probability exists that a more favorable trial result would have occurred, had defense counsel not made this argument, and, accordingly, the claim for relief should be summarily DENIED in all respects." (Id.).

Under established federal law, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen in it," Adams v. Wainwright, 709 F.2d 1443, 1445 (11 Cir.), cert. denied, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

The tactical advantage of conceding that the victim had a scar which could be removed with plastic surgery in order to gain credibility and an air of reasonableness before the jury, and thus potentially gaining an acquittal on more serious aspects of the case, is well recognized. See, e.g., United States v. Swanson, 943 F.2d 1070, 1075-76 (9 Cir. 1991)("In some cases a trial attorney may find it advantageous to his clients' interests to concede certain elements of an offense or his guilt of one of certain charges."); United States v. Simone, 931 F.2d 1186 (7 Cir. 1991)(admission that defendant was drug dealer in combination with vigorous defense of more serious charge recognized as "logical" and not ineffective assistance where inculpating evidence was undisputed).

Moreover, under federal law, the trial strategy of conceding guilt of a lesser crime does not require the client's express approval. In McNeal, supra at 677, the Eleventh Circuit stated that defense counsel should be allowed some freedom to argue for a lesser crime "without express approval of his client and without risk of being branded as being professionally ineffective because others may have different judgment or less experience." See also, Thomas v. Zant, 697 F.2d 977, 987 (11 Cir. 1983)("An attorney's strategy may bind his client even when made without consultation.")

In this case, it is clear that counsel made the strategic decision to concede the existence of the injury, but argue strategically that at best the injury was minor. Thus, the state court's rejection of the claim was both reasonable and in accord with the foregoing established federal authorities, and should not be disturbed. Williams v. Taylor, supra.

In **claim fifteen,** the petitioner asserts that his constitutional rights were violated when the prosecution had the

victim make an improper show-up identification. In the Rule 3.850 proceeding, the trial court denied relief based on the prosecution's argument that this claim could have been, but was not raised on direct appeal, and was therefore procedurally barred from review. Under these circumstances, this court should also bar the claim from review here. No manifest injustice would arise nor has the petitioner established cause or prejudice arising from his failure to pursue this claim on direct appeal. Regardless, the claim also fails on the merits.

The petitioner argues that the victim's in-court identification during a pretrial hearing where the petitioner was present was so suggestive and lacking in reliability as to amount to a violation of due process. Although a show-up is an inherently suggestive process, it "is not invalid if it did not give rise to a substantial likelihood of irreparable misidentification under the totality of the circumstances."[16] <u>Blanco v. State</u>, 452 So.2d 520, 524 (Fla.), <u>cert</u>. <u>denied</u>, 469 U.S. 1181 (1985). Further, in the process of reviewing the record to determine whether federal constitutional standards were violated in a habeas petitioner's underlying criminal case, the Court does not close its eyes to the reality of evidence of guilt fairly established in state court.

---

[16]An identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification can constitutive a Fourteenth Amendment violation, <u>Stovall v. Denno</u>, 388 U.S. 293 (1967), and a conviction based on eyewitness identification following a pretrial identification is invalid if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. <u>Simmons v. United States</u>, 390 U.S. 377 (1968). Both Florida and federal courts employ the same standard to determine if an out-of-court identification should be excluded:  1) did the police employ an unnecessarily suggestive procedure in obtaining it; and 2) if so, considering all the circumstances, was a likelihood of irreparable misidentification thereby created.  <u>Manson v. Braithwaite</u>, 432 U.S. 98 (1977); <u>Neil v. Biggers</u>, 409 U.S. 188 (1972); <u>Chihora v. Dugger</u>, 840 F.2d 893 (11 Cir. 1988); <u>Grant v. State</u>, 390 So.2d 341, 343 (Fla.), <u>cert.denied</u>, 451 U.S. 913 (1981). Factors to be considered in assessing the likelihood of misidentification include the witness' opportunity to view the defendant at the time of the crime, the witness' degree of attention, the level of certainty demonstrated by the witness, and the length of time between the crime and the confrontation.  <u>Grant</u>, <u>supra</u>, at 343.

<u>Milton v. Wainwright</u>, 407 U.S. 371, 377-78 (1971). <u>See</u> <u>Delaware v.</u>
<u>Van Arsdall</u>, 475 U.S. 673, 684 (1986).

The evidence gives ample assurance that the reliability of the
victim's identification was not outweighed by the suggestiveness of
the   "show-up."   Accordingly,   under   the   totality   of   the
circumstances, <u>Neil v. Biggers</u>, <u>supra</u> at 199-200, no due process
violation occurred and the show-up identification did not violate
the petitioner's constitutional rights. Thus, the rejection of this
claim, albeit based on a bar, should not be disturbed here. 28
U.S.C. §2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim sixteen,** the petitioner asserts that his
constitutional rights were violated when the court denied the
petitioner's judgment of acquittal and refused to reduce the
petitioner's charge to battery[17] at the close of the prosecution's
case, and at the close of all of the evidence.  Like claim fifteen,
the trial court denied relief on this claim based on the
prosecution's argument that the claim could have been, but was not
raised on direct appeal, and is therefore procedurally barred from
review. That finding was not error. Regardless, the claim also
fails on the merits.

In Florida, the courts do not grant a motion for judgment of
acquittal unless the evidence is such that no view which the jury
may lawfully take of it favorable to the opposite party can be
sustained under the law. <u>Lynch v. State</u>, 293 So.2d 44, 45 (Fla.
1974)(stating that "[w]here there is room for a difference of
opinion between reasonable men as to the proof or facts from which
an ultimate fact is sought to be established, or where there is

---

[17]Even if the court had so instructed the jury as to simple battery, no
showing has been made that the jury would have found the petitioner guilty as
such especially in light of the evidence adduced at trial which more than amply
supported the aggravated battery offense charged.

room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge."). A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence admitted at trial, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Id. In circumstantial evidence cases, a motion for judgment of acquittal will be granted if the state failed to present evidence from which the jury could exclude every reasonable hypothesis except that of guilt. State v. Law, 559 So.2d 187, 188 (Fla. 1989).

In this case however, the evidence presented at trial was more than ample to have permitted a rational trier of fact to find the offense charged. Therefore, based upon the evidence admitted at trial and applicable Florida law, the petitioner was not entitled to a judgment of acquittal by the trial court. Consequently, the petitioner is entitled to no relief on this claim.

Finally, it should be noted that the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, moved for judgment of acquittal, and presented a forceful closing argument.

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him

to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 14th day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Jerry Davis, <u>Pro Se</u>
     DC#017757
     DeSoto Correctional Institution
     13617 SE Highway 70
     Arcadia, FL 34266-7800

     Sue-Ellen Kenny, Ass't Atty Gen'l
     Office of the Attorney General
     1515 North Flagler Drive, Suite 900
     West Palm Beach, FL 33401-3432